# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-CR-0206-CVE |
| | ) (11-CV-83-CVE-FHM) |
| LEVI MCRAE LUGINBYHL, JR., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court are the following motions: defendant's Petition for Redress of Grievance Petition to Strike the Record Claim Against False Imprisonment (Dkt. # 132); defendant's motion for relief under Fed. R. Civ. P. 60(b)(4) (Dkt. # 138); and defendant's Petition for Redress of Grievance Habeas Corpus Writ of Quo Warranto (Dkt. # 139). Defendant claims that he is being imprisoned in violation of the Uniform Commercial Code and various international treaties and conventions, and he claims that he was falsely arrested and convicted for two federal crimes concerning his possession of a sawed-off shotgun. Dkt. # 132, at 5-16; Dkt. # 139, at 1. Defendant may also be challenging the validity of state court convictions and asserting civil claims for false arrest and imprisonment. Dkt. # 132, at 2-4.

On December 5, 2006, the grand jury returned an indictment charging defendant with possession of a firearm after former felony conviction (count one) and possession of a shotgun with a barrel of less than 18 inches in length (count two). Dkt. # 2. Defendant made his initial appearance on December 15, 2006, but refused to admit his identity or answer any questions asked

by the magistrate judge.[1] Dkt. # 5. The magistrate judge stated that "there is a reasonable question that the defendant may be suffering a mental illness [and] orders a mental study." Id. Defendant was referred to a federal medical center for a psychiatric or psychological evaluation, and a competency hearing was held on March 8, 2007. Dkt. # 16. Defendant requested a second opinion as to his competency to stand trial, and the magistrate judge granted defendant's request. Dkt. # 18. After reviewing the second opinion, the magistrate judge determined that defendant was competent to stand trial and defendant was arraigned on the charges alleged in the indictment. See Dkt. # 41.

Defense counsel filed a motion to suppress (Dkt. # 48) and filed other motions (Dkt. ## 50, 51, 52) asserting arguments that defendant wished to raise.[2] Defendant argued that the Court lacked jurisdiction over him because the case caption spelled his name using capital letters. Dkt. # 50, at 1. He also asserted numerous arguments alleging that the prosecution of gun charges against defendant violated the Uniform Commercial Code. See id. at 2-5. The Court denied defendant's pro se arguments and found that his arguments were unintelligible (Dkt. # 70), but set the motion to suppress for an evidentiary hearing. At the suppression hearing, the Court heard testimony concerning the conduct leading to defendant's arrest. On November 15, 2005, a woman called 911 and told the complaint-taker that a man, later identified as defendant, was in her neighbor's

---

[1] The magistrate judge initially appointed standby counsel for defendant, because he refused to answer questions as to whether he requested the assistance of counsel. Dkt. # 5. The magistrate judge later appointed a new attorney to represent defendant throughout this case. Dkt. # 12. The docket sheet shows that the Court received numerous pro se filings from defendant, and many of these documents were not filed and were simply forwarded to defense counsel.

[2] Defense counsel stated that defendant believed it was important to assert certain arguments, but defense counsel informed the Court that he advised defendant that the arguments were not legitimate or supported by any legal authority. Dkt. # 50, at 9.

backyard, and it appeared that he was trying to steal something. Dkt. # 62, at 2. She also said that "he looks like he's on drugs" and he "is back over there doing some crazy karate stuff."[3] Id. Defendant left the neighbor's back yard and began to walk down the street. A 911 dispatcher who relayed information to the police mistakenly believed that the caller stated that defendant had a gun.[4] Tulsa Police Department Officer Steve Williams found defendant walking down the street and asked defendant to approach his patrol car and produce identification. Defendant refused to give his name, made several anti-government statements, and stated that he did not recognize the authority of police officers. Id. at 4. Williams determined that defendant could be under the influence of drugs or alcohol, and waited for backup to arrive before approaching defendant. Williams conducted a pat-down search of defendant and felt an object that could be a gun. Williams raised defendant' coat and saw a firearm, and immediately placed defendant under arrest. Id. at 5. The Court found that Williams had reasonable suspicion to conduct an investigative detention based on the information relayed by the dispatcher and Williams' own observations of defendant, and defendant's motion to suppress was denied. Id. at 8-10.

Defendant exercised his right to a jury trial and also chose to testify in his own defense. Defendant attempted to explain that his possession of a shotgun was lawful and a representative sample of his testimony is the following:

---

[3] In his motion to suppress, defendant described the "karate" or martial arts behavior as "dance" moves. Dkt. # 48, at 3. He also stated that he had prior experience working for a carnival and, based on his observation of a concession truck in the back yard, he entered the back yard to ask the owner of the truck for a job. Id. at 1-2.

[4] In fact, the complaint-taker heard the caller ask another resident of the home to "go get the gun to shoot this man." Id. at 3. The complaint-taker asked the caller not to get a gun and the caller later stated that no one retrieved a gun. Id.

3

> The weapon that was -- that's being talked about, it was an antique, and it was registered -- I registered it through a -- as I known [sic] it was -- what type of weapon it was, I registered it with a security agreement through the Secretary of State through the Uniform Commercial Code division, registering as private property, making a claim on it. When you make a claim on your private property, it automatically becomes yours. You become a title holder and owner in due course. The government don't tell us that because it was our responsibility to know the law. And I registered it with a security agreement after I ended all contracts and did reaffirmation of dual citizenship, separation of powers of church and state, as a flesh-and-blood living temple, where I'm not taxable. And I rebutted the presumption as AKA surety status, beneficiary, or debtor with a tax numer, tax ID number, and a tax license number, you know, and the social security number, which is actually a slave number because you become -- you become a subject as property of the United States, and you are regulatable as property of the United States.

Dkt. # 119, at 60-61. On cross-examination, defendant admitted that he possessed a sawed-off shotgun and he obtained the shotgun by disarming an attempted robber using his martial arts training. Id. at 83-84. He also admitted that he sawed the barrel of the shotgun, but claimed that he had the right to alter his personal property and pursue his personal trade as a blacksmith. Id. at 87, 96. The jury found defendant guilty of both counts charged in the indictment. Dkt. ## 87, 88.

The Court sentenced defendant to 95 months imprisonment as to each of counts one and two, and ordered that the sentences run concurrently. Dkt. # 101, at 2. Defendant appealed his convictions and sentence to the Tenth Circuit Court of Appeals, and argued that the Court erred by denying his motion to suppress. On April 16, 2009, the Tenth Circuit affirmed the denial of defendant's motion to suppress and his convictions and sentence. Dkt. # 129. Defendant did not file a petition for writ of certiorari in the United States Supreme Court. On January 31, 2011, defendant filed a Petition for Redress of Grievance Petition to Strike the Record Claim Against False Imprisonment (Dkt. # 132). He argues, inter alia, that the Court lacked jurisdiction to hear criminal charges against defendant and that he was arrested in violation of the Fourth Amendment and

various commercial statutes.[5] Dkt. # 132. Defendant requests to be released from prison and seeks monetary damages for false arrest and imprisonment. The Court advised defendant that it would characterize his motion as a motion to vacate, set aside, or correct sentence under § 2255. Dkt. # 133. Defendant was permitted to withdraw his motion, or supplement his motion with all claims that defendant intended to assert under § 2255, no later than March 9, 2011. Id. at 3. The Court noted that defendant's § 2255 motion appeared to be untimely, and that defendant should demonstrate why his motion is not barred by the one year statute of limitations. Id. at 4. Defendant subsequently filed four documents (Dkt. ## 134, 135, 138, 139), but did not reference the Court's order or attempt to show that his § 2255 motion was timely.[6]

Under 28 U.S.C. § 2255(f), a criminal defendant has one year from "the date on which the judgment of conviction becomes final" to file a motion for relief under § 2255. If a defendant files an appeal, his conviction becomes final "when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." Clay v. United States, 537 U.S. 522, 525 (2003). If a defendant does not appeal, the conviction becomes final after the defendant's deadline to file an appeal has expired. United States v. Guerrero, 488 F.3d 1313, 1316 (10th Cir. 2007). The one year statute of limitations is subject to equitable tolling when "an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary

---

[5] Defendant refers to "Levi McRae Luginbyhl" as a warehoused good being stored in federal prison in violation of a security agreement, and asks the Court to order the release of the warehoused goods. Dkt. # 132, at 23. Defendant has attached a copy of a security agreement identifying Levi McRae Luginbyhl as a "debtor" to Levi Hawkins, a "natural man." Id. at 35.

[6] The Court mooted one of the motions and its supporting brief (Dkt. ## 134, 135), and will treat the remaining motions (Dkt. ## 138, 139) as supplemental briefs in support of defendant's § 2255 motion.

5

circumstances beyond his control." United States v. Gabaldon, 522 F.3d 1121, 1124 (10th Cir. 2008).

In this case, defendant's conviction became final on July 15, 2009. The Tenth Circuit issued its decision on April 16, 2009 and defendant did not file a petition for writ of certiorari. Defendant's conviction became final after 90 days when his time to file a petition for writ certiorari expired, and defendant had one year from July 15, 2009 to file a § 2255 motion. Thus, defendant's § 2255 motion is untimely if it was filed after July 15, 2010. Defendant did not file his motion until January 31, 2011. The Court reviewed defendant's motion (Dkt. # 132) and advised defendant that it would characterize the motion as a § 2255 motion. Dkt. # 133. The Court did not rule on the timeliness of the motion at that time, but advised defendant that he should be prepared to demonstrate that his motion was timely if he chose to proceed with a § 2255 motion. In one pleading (Dkt. # 139), defendant states he is "not necessarily" seeking relief under § 2255 and, instead, he is invoking the "admrilty [sic] and maritime jurisdiction and [the case] involves breach of The U.N. Convention on Contracts and salse [sic] of Goods . . . ." Dkt. # 139, at 1.

The Court finds that defendant's § 2255 motion is untimely and defendant has made no attempt to show that the statute of limitations is subject to equitable tolling. Defendant's deadline to file a § 2255 motion was July 15, 2010, and he did not file his motion until January 31, 2011. Defendant has not shown that circumstances beyond his control prevented him from filing a timely § 2255 motion, and the Court finds no basis to equitably toll the statute of limitations. Thus,

6

defendant's § 2255 motion is clearly untimely.[7]  Defendant may be attempting to avoid the jurisdictional limitations of § 2255 but, to the extent he is seeking to be released from prison, defendant's motion must be characterized as a § 2255 motion.  Caravalho v. Pugh, 177 F.3d 1177 (10th Cir. 1999) ("The exclusive remedy for testing the validity of a judgment and sentence, unless it is inadequate or ineffective, is that provided for in 28 U.S.C. § 2255.").  Defendant may also be requesting monetary damages for alleged constitutional violations and he may be challenging the validity of state court convictions.  See Dkt. # 132, at 2-4.  However, defendant's criminal case is not the appropriate forum to raise either type of claim.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence under § 2255 (Dkt. # 132) and supplemental briefs (Dkt. ## 138, 139) are **dismissed with prejudice as time-barred**.  A separate judgment is entered herewith.

**DATED** this 24th day of March, 2011.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[7] Even if the Court could consider defendant's § 2255 motion, the Court notes that defendant has not asserted an intelligible claim that would entitle him to relief.  It is not clear how the Uniform Commercial Code, commercial statutes, or international treaties cited by defendant would support a valid § 2255 claim.  In addition, this Court and the Tenth Circuit have determined that police had a valid basis to arrest defendant, and defendant is barred from challenging the validity of his arrest in a post-conviction motion.  See United States v. Warner, 23 F.3d 287, 291-292 (10th Cir. 1994) (criminal defendant barred from relitigating in post-conviction proceedings issues decided on direct appeal).